**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TYRAN LOGGINS, | ) | Civil Division |
| | ) | |
| Plaintiff, | ) | No.  2:22-cv-1241 |
| v. | ) | |
| | ) | |
| PREMIER PAN COMPANY, INC. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**COMPLAINT**

AND NOW COMES Plaintiff, Tyran Loggins, ("Plaintiff" or "Mr. Loggins"), by and through his undersigned counsel, and brings this Complaint seeking legal and equitable relief for disability discrimination against Defendant Premier Pan Company, Inc. ("Premier" or the "Company") in violation of the Americans with Disabilities Act of 1990 and the ADA Amendments Act of 2008 (collectively, the "ADA"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"),, as well as pendent state law claims arising under the provisions of the laws of this Commonwealth, to wit, the Pennsylvania Human Relations Act, 42 P.S. § 951, et seq. (hereinafter referred to as "PHRA").  Mr. Loggins states and avers the following:

**INTRODUCTORY STATEMENT**

Put simply, due to his race (African American) and his disabilities (bipolar disorder, depression and anxiety), Mr. Loggins suffered harassment and discrimination while working at Premier. Management repeatedly disciplined Mr. Loggins and illegally terminated him for conduct that results from his disability, after being put on notice of Mr. Loggins' disability on multiple occasions and failing to engage him in the interactive process.  Premier told Mr. Loggins he was

being fired for his emotional "outbursts" and their termination paperwork reflects that he was being

"very disruptive having an outburst of anger." Such behaviors manifest from Mr. Loggins bipolar

disorder and mental health disabilities which could have been managed through a reasonable

accommodation. Firing him for these behaviors is akin to firing Mr. Loggins for his disability,

itself, under the relevant statutes. As a direct and proximate result, Mr. Loggins' has tangible

economic loss and substantial emotional and physical distress, embarrassment and humiliation,

and pain and suffering.

## JURISDICTION AND VENUE

1.      Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1332 and 1391. This action

is authorized and instituted pursuant to the ADA, Title VII and the PHRA.

2.      Pursuant to 28 U.S.C. § 1367(a), The United States District Court for the Western

District of Pennsylvania has supplemental jurisdiction over Mr. Loggins' state-law claims, which

arise from the case and/or controversy as the aforementioned claims, for which this Court has

original jurisdiction.

3.      The unlawful employment practices and wrongful termination were committed by

the Defendant in or around Allegheny County, Pennsylvania. Therefore, the United States District

Court for the Western District of Pennsylvania is the proper venue for the action under 42 U.S.C.

§ 2000e-5(f) and 28 U.S.C. §1391(b).

4.      Plaintiff timely exhausted his administrative remedies by filing a charge against

Defendant on or about December 16, 2021, jointly with the Equal Employment Opportunity

Commission ("EEOC") and Pennsylvania Human Relations Commission ("PHRC") at 533-2022-

00552. Plaintiff's PHRC and EEOC Charges are incorporated by reference as if fully set forth

herein. On June 2, 2022, the EEOC mailed Plaintiff a Dismissal and Notice of Rights letter (the

"Right to Sue" letter), advising him of the right to bring this action.  Plaintiff has filed the instant

suit within 90 days of receipt of the Right to Sue letter.

5.      At all relevant times hereto, Premier was an employer within the meaning of the

ADA and Title VII.

## PARTIES

6.      Tyran Loggins is a 31-year-old African American individual who resides at 37

Bateman Street, Millvale, Pennsylvania 15209.

7.      At all relevant times hereto, Premier Pan Company, Inc., is and was a Pennsylvania

for-profit corporation with a principal office located at 33 McGovern Boulevard, Crescent,

Pennsylvania 15046.

## FACTS

8.      Plaintiff incorporates by reference the allegations contained in the foregoing

paragraphs as though fully set forth herein at length.

9.      Mr. Loggins was hired by Premier in August of 2020 and worked as an Operator

until his illegal firing in November of 2021.

10.     During his interview with Samantha Brunk, Human Resources Coordinator, Mr.

Loggins was transparent about his mental health struggles and his disabilities.

11.     At no time throughout the hiring process did Ms. Brunk or anyone from Premier

Pan ask Mr. Loggins whether he needed an accommodation to accomplish the essential functions

of his position.

12.     Mr. Loggins began working in the upper warehouse as a machine operator, then

began learning the CNC wire bender.

13.     At the time of his hire, he was promised an hourly wage of $14.00 per hour.

14.    He was quickly moved up the ranks within the company and was asked to learn how to work the robot from Sam Lamberto, in preparation for Sam's retirement.

15.    Mr. Loggins was told that he was the only one Sam would train, and he was given a raise to $17.00 per hour.

16.    In January of 2021, he was again moved to learn the position of blank cutter.

17.    He became certified in lock out tag out ("LOTO") and certified to use the forklift. In April of 2020, Mr. Loggins' supervisor Edgar Shingler ("Ed") told him he was the "whitest Black person that he knows."

18.    By all subjective measures, Mr. Loggins was succeeding in the positions he was being assigned.

19.    Around this time, Mr. Loggins was invited to a co-worker's house for a birthday party, which he attended with his daughter and his finance.

20.     Following the party, his fiancé warned him about Edgar Shingler and Elliott Walsh.

21.    Sam retired in April of 2021 and Mr. Loggins' job duties significantly increased. Mr. Loggins was being forced to train someone how to run the CNC bender (while running it) and while also maintaining the blank cutter (which requires him to operate manually).

22.    He was awarded another raise and was promised $19.75 per hour.

23.    The stress of handling such a significant workload began to wear on Mr. Loggins and trigger his disabilities.

24.    In September of 2021, Mr. Loggins began feeling manic.

25.    He was feeling "up," as it was his one-year anniversary with the Company, and he had already been awarded another raise as part of his annual performance evaluation.

26.     Mr. Loggins learned that the Company continued to promote Mr. Loggins, awarding him another raise to $22.00 per hour.

27.     On or about October 30, 2021, Mr. Loggins met with Courtney Adler ("Courtney"), Human Resources Coordinator.

28.     During the meeting, he asked how he could be a better employee.

29.     Ms. Adler showed Mr. Loggins his performance evaluation and noted that the evaluation indicated to "keep his emotions in check."

30.     Ms. Adler did so, knowing that he suffers from bipolar disorder, making it difficult for Mr. Loggins to control his emotions.

31.     Neither Ms. Adler nor the performance evaluation mentioned any "safety concerns," derived from Mr. Loggins' conduct.

32.     She asked if Mr. Loggins was okay, and he advised her that he was feeling manic and upset, because of his bipolar disorder.

33.     Courtney asked Mr. Loggins if he wanted to clock out.

34.      He advised her that he believed he was okay to finish his last two (2) hours of work, and he proceeded to go back to his duties.

35.     Upon information and belief, Courtney called Mr. Loggins' supervisor Dave, who found Mr. Loggins and told him to clock out.

36.     Mr. Loggins was then sent home.

37.     Later that evening, Courtney advised him he was being suspended for the rest of the week.

38.     When he asked why, he was informed that he was "crushing scrap aggressively."

39.    Part of Mr. Loggins' job duties and responsibilities include crushing scrap. By nature of the actions involved, crushing scrap requires what could be considered "aggressive" action.

40.    While Mr. Loggins was suspended, Ed began telling other employees that Mr. Loggins was going to get fired.

41.    At this time, it became apparent that Ed was targeting Mr. Loggins.

42.    He would constantly mess with him, claiming he was "gullible," "naive" and easy to trick.

43.    Ed was doing this in an effort to trigger Mr. Loggins so that he would become angry, as a result of his disability, in order to set him up to be terminated.

44.    For example, Ed and Elliott would intentionally create issues with the production process, resulting in damaged product being produced by Mr. Loggins.

45.    When Mr. Loggins calmly asked Ed why he was messing with him, Ed escalated the conversation, eventually yelling at Mr. Loggins, "f*ck you," while flipping him off.

46.    This was affecting Mr. Loggins' mental health and was triggering to his bipolar disorder.

47.    In or around the first week of November, Mr. Loggins' other supervisor Elliott sexually assaulted one of his coworkers (he grabbed the butt of a female employee without her consent).

48.    Thereafter, Ed, Elliott and Dave continued to hover around this woman in a threatening way.

49.    Dave made an inappropriate joke which further upset her.

50.     This infuriated and disgusted Mr. Loggins.  Mr. Loggins' supervisor Jen asked why he was so mad, and he responded by asking her how she was not upset because the Company does not care about the fact that a woman was just sexually harassed and nothing was being done to protect her.

51.     Dave, who is Jen's significant other, told her to stop wasting her breath speaking with me.  This entire ordeal agitated Mr. Loggins.

52.     On November 18, 2021, Mr. Loggins was feeling ill, and he had his head down before their shift meeting.

53.     Dave proceeded to give him an order, which he acknowledged.

54.      Mr. Loggins heard the order to be "finish the rack of 8x8 and get set up for the #1 loaf."

55.     Mr. Loggins went up to his station and awaited further instructions.

56.     Jen then asked him why he was not bending the #1 loaf and he told her that he was waiting on an approved pan.

57.     Jen told him that they had an approved one and they were waiting on the wire.  Mr. Loggins indicated that he did not know that and began the wire.

58.     Dave then drove by, and Mr. Loggins asked him a question.

59.     Dave disrespectfully snapped the response to Mr. Loggins' question.

60.      Before lunch, Mr. Loggins asked his supervisor Jen if he could go home for the day, indicating that he was having a mental health issue caused by his bipolar disorder, triggered by Dave's conduct.

61.     Jen told him that it was okay to leave.

62.     Before Mr. Loggins left, he tried to speak to Dave again to reach an understanding as to what just took place.

63.     Dave immediately cut him off and began to yell.

64.      Jen told Dave to let Mr. Loggins' speak, and Mr. Loggins proceeded to explain that he did not hear the instructions.

65.     He asked why it felt as though all of his supervisors were targeting him and were against him.

66.     Dave continued to yell and said he was going to sit and watch him fail if it was not for Jen.

67.     Dave stated that he already got the okay to fire Mr. Loggins and that he was making it easy for him to do so.

68.     In response, Mr. Loggins began to cry.  Dave told him to "get the fuck out and go home."

69.     That afternoon, Mr. Loggins received a call from Human Resources terminating him.

70.     Mr. Loggins was advised that he was being let go because of his "outbursts."

71.     The behavior Premier relied upon to terminate Mr. Loggins is behavior that stemmed from Mr. Loggins disability was behavior that was also exhibited by Mr. Loggins' Caucasian comparators and his supervisor Dave yet accepted by the Company.

72.     The County's aforementioned conduct and disparate treatment, discrimination retaliation and wrongful termination of Plaintiff based on his disability and request for reasonable accommodation were in violation of the ADA, Title VII, and the PHRA.

73.     Plaintiff is in a protected class under the ADA, Title VII and PHRA at the time the acts of discrimination and retaliation occurred.

74.     At all relevant times hereto, Defendant acted or failed to act by and through its duly authorized agents, servants, and employees, who conducted themselves within the scope and course of their employment.

## COUNT I
### Discrimination and Retaliation in Violation of the Americans with Disabilities Act and Amendments Thereto ("ADA")

75.     Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein at length.

76.     At all times relevant, Defendant was an "employer" within the meaning of the ADA and/or ADAA.

77.     Plaintiff is a "qualified individual with a disability" as that term is defined in the ADA and/or ADAAA because he has, or had at all times relevant hereto, a physical impairment that substantially limited/limits one or more major life activities, or because he had a record of such impairment.

78.     Plaintiff also is a "qualified individual with a disability" as that term is defined in the ADA and/or ADAAA because he was regarded as and/or perceived by Defendant and their agents as having a physical and/or mental impairment that substantially limited/limits one or more major life activities.

79.     Specifically, Plaintiff suffers from depression, anxiety and bipolar disorder which results in mood lability (anger, loss of interest, sadness, apprehension, elevated moods, etc.).  Mr. Loggins' bipolar disorder also affects his interpersonal relationships.

80.     Mr. Loggins' emotional outbursts resulted from his disability.

81.     Mr. Loggins' co-workers instigated him in a blatant attempt to trigger him knowing he had a disability.

82.     Mr. Loggins advised Human Resources on numerous occasions that he suffered from bipolar disorder and that his co-workers behaviors were frequently triggering to him.

83.     The Company failed to engage Mr. Loggins in the interactive process to determine if there was an accommodation that could assist Mr. Loggins with handling his emotions in the workplace.

84.     The Company further failed to take any affirmative actions to prevent Mr. Loggins' co-workers and supervisors from provoking him.

85.     Plaintiff could complete the functions of his position as a with or without a reasonable accommodation.  However, Premier ignored his pleas for assistance.

86.     Mr. Loggins made his supervisors and Human Resources aware on multiple occasions, including at the time of his hire, of his disabilities, and he requested assistance for the same.

87.     Mr. Loggins also complained that he was being targeted by management because of his disability.

88.     Mr. Loggins' was never violent, never threatened any of his co-workers or created an unsafe working environment.

89.     The reason proffered for Mr. Loggins' termination is premised upon symptoms of Mr. Loggins' disability and is direct evidence that Premier terminated Mr. Loggins for his disability, itself.

90.     Defendant's termination of Plaintiff's employment was motivated by his disability and/or because Defendant regarding Plaintiff as disabled and/or in retaliation for Plaintiff engaging in protected activity under the ADA.

91.     Defendant's unlawful and discriminatory practices complained of herein were intentional and done with malice or without reckless indifference to Plaintiff's federally-protected rights.

92.     As a direct and proximate result of the unlawful and discriminatory practices described herein, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and potential lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, and pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he has suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## COUNT II
### Discrimination and Retaliation in Violation of the Title VII of the Civil Rights Act of 1964

93.     Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein at length.

94.     The foregoing conduct, including the specific targeting of Mr. Loggins, along with other adverse actions directed at Mr. Loggins because of his race and for opposing racial discrimination, constitutes unlawful discrimination and retaliation against Plaintiff.

95.     At all times relevant, each Defendant was an "employer" within the meaning of Section 701(b) of Title VII.

96.     Mr. Loggins was subjected to a hostile work environment and was intentionally discriminated and retaliated against because of his race, in violation of Title VII.

97.     Mr. Loggins was also treated differently and held to different standards than his Caucasian comparators.

98.     Premier attempted to paint Mr. Loggins as the "angry Black man," terminating him for his "emotional outbursts" when his Caucasian comparators acted similarly, without reprimand, and when the "emotional outburst" were caused by Mr. Loggins' disability which was triggered by his supervisor's baiting of him.

99.     Defendants knew or should have known about the discriminatory conduct and harassment to which Mr. Loggins was subjected and failed to take appropriate remedial action.

100.    Mr. Loggins complained to his supervisor and to Human Resources about the hostile work environment to which he was subjected.

101.    Defendant's failure to maintain a workplace free of harassment and a failure to take prompt remedial action to address the hostile work environment and racial discrimination to which Plaintiff was subjected was intentional, malicious and in reckless indifference to Mr. Loggins' protected federal and state rights.

102.    As a result of Defendant's unlawful discrimination, Mr. Loggins' has suffered damages as set forth herein.

103.    Defendant's unlawful treatment of Mr. Loggins based on his race and in retaliation for opposing racial discrimination as well the Defendants' more favorable treatment of white employees constitutes conduct and employment practices made illegal under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2(a)(1), and the Pennsylvania Human Relations Act.

104.    Premier's conduct described above had the purpose and effect of depriving Mr. Loggins 'of the rights enjoyed by individuals outside his protected class and, therefore, was in violation of Title VII and the PHRA.

105.    Premier made the decision to fire Mr. Loggins because he opposed conduct made illegal under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2(a)(1), and therefore violated 42 U.S.C. §2000e-3(a).

106.    As a direct and proximate result of the discrimination, disparate treatment, harassment, retaliation, hostile work environment and wrongful termination which Mr. Loggins' suffered while employed by Defendant, Mr. Loggins' has suffered not only tangible economic loss in the form of lost back pay and benefits and potential lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, and pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he has suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra.*

## COUNT III
### Discrimination and Retaliation in Violation of the Pennsylvania Human Relations Act

107.    Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein at length

108.    This is an action arising under the provisions of the laws of the PHRA and this Honorable Court has, and should, exercise pendent jurisdiction over the same because the cause of action set forth in this COUNT III arises out of the same facts, events and circumstances as in the above COUNTS I AND II, and therefore judicial economy and fairness dictate that this COUNT II be brought in this same Complaint.

13

109.   At all times relevant, Defendant was an "employer" within the meaning of Section 954(b) of the PHRA.

110.   By engaging in the creation and fostering of a discriminatory environment based on Mr. Loggins' disability and race, Defendant violated those sections of the PHRA which prohibits discrimination based upon disability and race regarding the continuation and tenure of employment.

111.   Plaintiff further maintains that other, Caucasian, non-disabled employees acted similarly and were not disciplined or discharged.

112.   Defendant's termination of Plaintiff's employment was motivated by his race, disability and/or because Defendant regarding Plaintiff as disabled.

113.   Defendant's unlawful and discriminatory practices complained of herein were intentional and done with malice or without reckless indifference to Plaintiff's state-protected rights.

114.   As a direct and proximate result of the unlawful and discriminatory practices described herein, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and potential lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, and pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he has suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## **DEMAND FOR JURY**

WHEREFORE, Plaintiff demands judgment against Defendant, and damages in excess of $75,000 as follows:

a. That Plaintiff be awarded actual and consequential damages to make Plaintiff whole including back pay with prejudgment interest, front pay and compensation for lost benefits, in an amount to be proven at trial, and other affirmative relief necessary to eradicate the effects of Plaintiff's damages associated with Defendant's discrimination, retaliation and wrongful termination of Plaintiff pursuant to the ADA, ADAAA, Title VII and PHRA;

b. That Plaintiff be awarded economic and compensatory damages to compensate for all costs associated with the discrimination and retaliation including lost wages and medical expenses;

c. That Plaintiff be awarded nominal damages;

d. That Plaintiff be awarded punitive damages in an amount sufficient to punish Defendant for its intentional, wanton and malicious conduct and to deter similar misconduct;

e. That Plaintiff be awarded the costs of this litigation, including reasonable attorney's fees; and

f. That Plaintiff be awarded such further relief as deemed to be just and proper.

Date:   August 30, 2022                                 Respectfully Submitted,


                                                        */s/ Stephanie L. Solomon*
                                                        Stephanie L. Solomon, Esquire
                                                        Pa. I.D. 208056
                                                        HKM EMPLOYMENT ATTORNEYS LLP
                                                        220 Grant Street
                                                        Suite 401
                                                        Pittsburgh, PA  15219
                                                        412.760.7802
                                                        ssolomon@hkm.com

                                                        **JURY TRIAL DEMANDED**

15